UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COLLEEN MCCULLOUGH,

Plaintiff,

v.

CITY AND COUNTY OF SAN
FRANCISCO, et al.,

Defendants.

Case No.  24-cv-03260-JCS

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

Re: Dkt. No. 21

## I.      INTRODUCTION

Plaintiff Colleen McCullough brings this excessive force action against San Francisco Police Department ("SFPD") Sergeant Brendan Caraway, SFPD Captain Mark Cota and the City and County of San Francisco based on events that occurred at a March 2, 2024 pro-Palestine demonstration, when Sergeant Caraway, in the presence of Captain Cota, struck McCullough's hand with a baton, breaking the metacarpal bone in her left hand in at least three places and requiring surgery. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), in which Defendants ask the Court to dismiss four of McCullough's ten claims (Claims Two, Four, Six and Nine) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court finds that the Motion is suitable for determination without oral argument and therefore **vacates the motion hearing set for October 2, 2024** pursuant to Civil Local Rule 7-1(b). The Initial Case Management Conference set for the same date will remain on calendar**.**  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.      FIRST AMENDED COMPLAINT

McCullough is a 27-year-old substitute teacher for Oakland Unified School District "who has been devastated by the genocide occurring in Palestine." First Amended Complaint, ("FAC") ¶ 11. On Saturday, March 2, 2024, she participated in "a peaceful march in support of Palestine along with thousands of other concerned Bay Area residents." *Id. ¶ 12.* According to McCullough, similar peaceful marches "had been occurring regularly in San Francisco since October 2023, when Israel began its genocidal attack on Palestinians in Gaza with the assistance and material support of the United States of America[ ] . . . without major police interaction with demonstrators." *Id.* ¶¶ 13-14.

Around 3 p.m., the march turned down Montgomery Street in San Francisco and encountered San Francisco Police Officers, including Captain Mark Cota and Sergeant Brendan Caraway, who had erected a barrier of temporary metal parade fencing along the street that prevented the demonstrators from passing the building that houses the Israeli Consulate. *Id.* ¶¶ 15-17. McCullough was at the front of the march and was one of many demonstrators lined up against the barrier. *Id.* ¶ 18. The demonstrators were "peacefully chant[ing] messages in support of Palestine and . . . critical of the United States government in front of the officers." *Id*. ¶ 20.

According to McCullough, "[w]ithout warning and without lawful provocation or justification, Sergeant Caraway raised his baton up with his right hand and slammed it down towards the barricade." *Id.* ¶ 21. He "then observed Ms. McCullough's left hand on the barricade [and] raised his baton up, this time with both his right and left hand, and brought his baton crashing down on . . . McCullough's left hand with what appeared to be the force of his entire upper body." *Id.* ¶¶ 22-23. "The force of his precision strike pulverized the third metacarpal bone in Ms. McCullough's left hand." *Id.* ¶ 24.

McCullough alleges that Sergeant Caraway "used force against at least six peaceful demonstrators including . . . McCullough" in the presence of Captain Cota, who was standing to Sergeant Caraway's immediate right when Sergeant Caraway's use of force occurred, but that Captain Cota "failed to intervene in Sergeant Caraway's excessive use of force despite being in a position to observe his excessive force and being a ranking officer on the scene." *Id.* ¶¶ 25-26.

United States District Court
Northern District of California

The blow from Sergeant Caraway's baton caused McCullough "excruciating pain" and she immediately sought medical attention, going directly to the emergency room, where x-rays revealed "a comminuted (meaning broken in more than three places) and displaced fracture of the third metacarpal on her left hand[,]" which is her dominant hand. *Id.* ¶¶ 19, 27-28. McCullough underwent hand surgery three days later. *Id.* ¶ 29. According to McCullough, "she is living in pain as she recovers from surgery[,]" "is unable to work as she recovers, and . . . must rely on assistance from others to perform activities of daily living." *Id.* ¶ 30. She further alleges that it is "unclear whether [she] will regain complete hand function." *Id.*

McCullough alleges that although Sergeant Caraway knew that he struck her hand with his baton "with great and exacting force, he falsified his use of force report and stated that none of his uses of force against any peaceful demonstrator that day had resulted in injury." *Id.* ¶ 32. She further alleges that "Captain Cota, who was also in a position to observe the force used by Sergeant Caraway and the likelihood of injury resulting from the extreme force, did not correct Sergeant Caraway's false report." *Id.* ¶ 33.

According to McCullough, Sergeant Caraway "has an extensive history of using excessive force[,]" which includes "punch[ing] an arrestee whom he believed was in possession of narcotics numerous times in the face and head" in 2013; "chok[ing] out a man in front of his young child after the man objected to [then-]Officer Caraway's unsafe driving" that same year; "again chok[ing] out a young man who was visiting San Francisco and skateboarding on Market Street" while in plain clothes in 2015; and "striking the man in the face four times with his closed fist" during an arrest for possession of narcotics while the man was subdued by other officer in 2023. *Id.* ¶¶ 33-37.

Despite this history of excessive force, SFPD "promoted Brendan Caraway to Sergeant and maintained him in that position." *Id.* ¶ 38. Furthermore, the Chief of Police, who is employed by the City and County of San Francisco and is "responsible for the imposition of discipline and administration of corrective action when a police officer violates policy and/or the law[,]" "failed to supervise, discipline, and/or train Sergeant Caraway to avoid using such needless and excessive force"; instead, the Chief of Police promoted him and on November 27, 2023 awarded him a

3

1   commendation.  *Id.*  ¶¶ 38-42.  McCullough alleges that "[t]his repeated failure to supervise,

2   discipline, and/or train Sergeant Caraway amounts to ratification by the Chief of Police of

3   Sergeant Caraway's multiple uses of excessive force." *Id.*  ¶ 43.

4       On April 8, 2024, McCullough presented a claim to the City and County of San Francisco

5   pursuant to California Government Code section 910 et seq.  *Id.*  ¶ 45. Because more than 45 days

6   have passed since she presented her claim, and the City and County of San Francisco has failed to

7   act, the claim is deemed denied by operation of law pursuant to California Government Code

8   section 911.6(c).  *Id.*  ¶ 46.

9       McCullough asserts the following claims in her First Amended Complaint: 1) excessive

10  force in violation of the Fourth Amendment and 42 U.S.C. § 12132[2] against Defendant Caraway

11  (Claim One); 2) retaliation in violation of the First Amendment and 42 U.S.C. § 1983 against

12  Defendant Caraway (Claim Two); 3) failure to intervene to prevent use of excessive force under

13  42 U.S.C. § 1983 against Defendant Cota (Claim Three); 4) *Monell*  liability under 42 U.S.C. §

14  1983 for failure to train and supervise Defendant Caraway against Defendant City and County of

15  San Francisco (Claim Four); 5) violation of the Bane Act, Cal. Civ. Code § 52.1, against all

16  defendants (Claim Five); 6) violation of the Ralph Act, Cal. Civ. Code § 51.7, against Defendants

17  Caraway and Defendant City and County of San Francisco (Claim Six); 7) assault against all

18  defendants (Claim Seven); 8) battery against Defendant Caraway (Claim Eight); 9) negligent

19  hiring, training and retention, under California Government Code §§ 815.2, 820(a), and 820.8,

20  against Defendant City and County of San Francisco (Claim Nine); and 10) negligence under Cal.

21  Civ. Code § 1714 against all defendants (Claim Ten).

22  **III.    THE MOTION**

23      In the Motion, Defendants ask the Court to dismiss the retaliation claim (Claim Two), the

24  *Monell* claim (Claim Four), the Ralph Act claim (Claim Six), and the negligent hiring, training,

25  and retention claim (Claim Nine) pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis

26

27  [2] The caption of this claim cites 42 U.S.C. § 12132, which prohibits discrimination on the basis of disability.  As there are no allegations of disability discrimination in the complaint, the Court

28  concludes this is a clerical error and that this claim was intended to be asserted under 42 U.S.C. § 1983.

United States District Court
Northern District of California

that the factual allegations in the FAC are not sufficient to state a claim.  Motion at 2.

With respect to the retaliation claim, Defendants contend McCullough has not plausibly alleged that Defendant Caraway's action was substantially motivated by McCullough's participation in protected activity.  *Id.* at 2, 4-5.  Defendants assert that the *Monell* claim is not adequately alleged because McCullough fails to plead facts sufficient to support a plausible failure to train or ratification theory.  *Id.* at 2, 5-9.  According to Defendants, McCullough also fails to allege sufficient facts to support an inference that any defendant had an improper motive for her Ralph Act claim. *Id.* at 2, 9-10.  Finally, Defendants contend there is no viable negligent hiring, training, and retention claim against the City and County of San Francisco under state law.  *Id.* at 2, 10-11.

## IV.  ANALYSIS

### A.  Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted.  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff

United States District Court
Northern District of California

1   must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that

2   the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

3           **B.   Claim Two (First Amendment Retaliation Claim)**

4                 **1.   Background**

5       In support of Claim Two, McCullough alleges that she was "engaged in a protected

6   activity when she participated in a peaceful protest march in support of a ceasefire in Gaza[;]" that

7   "[t]he protected message of the march was one critical of the government including of the police

8   who impeded the march's progress[;]" and that "Defendant Brendan Caraway acted under color

9   of law when he used unnecessary and unreasonable force to silence [her] speech." FAC ¶¶ 51-53.

10  In the Motion, Defendants contend these allegations are too conclusory to raise a plausible

11  inference that " 'the protected activity was a substantial or motivating factor in [Sergeant

12  Caraway's] conduct.'" Motion at 4 (quoting *Index Newspapers LLC v. United States Marshals

13  Serv.*, 977 F.3d 817, 827 (9th Cir. 2020)).  Defendants note that McCullough "does not allege

14  Sergeant Caraway holds views or made comments against the protest, against Plaintiff, or against

15  the alleged viewpoints of the march" and contends "[t]here are no facts to plausibly support an

16  inference that Sergeant Caraway had animus towards Plaintiff or her protected activities and acted

17  upon such animus in the alleged use of force." *Id.* at 5.

18        In her Opposition, McCullough counters that the allegations are sufficient to give rise to a

19  plausible inference of retaliatory animus and a causal connection between that animus and her own

20  harm. Opposition at 4.  According to McCullough, "[e]ven where another plausible justification

21  may exist for a defendant's actions, a plaintiff may still prevail on a First Amendment retaliation

22  claim where the defendant was substantially motivated by plaintiff's protective activity." *Id.*

23  (citing *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016)).  McCullough asserts that she has met

24  this pleading requirement based on the "timeline and a lack of other plausible legitimate motive"

25  for Sergeant Caraway's use of force.  Opposition at 5 (citing *Watison v. Carter*, 668 F.3d 1108,

26  1114 (9th Cir. 2012); *Crump v. Bay Area Rapid Transit Dist.*, No. 17-CV-02259-JCS, 2018 WL

27  4927114, at *14 (N.D. Cal. Oct. 10, 2018), aff'd, 821 F. App'x 705 (9th Cir. 2020); *Johnson v.

28  Cnty. of San Bernardino*, No. EDCV 18-2523-GW-AFMX, 2020 WL 5224350, at *17, *20 (C.D.

United States District Court<br>Northern District of California

1   Cal. June 24, 2020)).  She points to her allegations that just before Sergeant Caraway's use of

2   force, the demonstrators were chanting pro-Palestine messages and messages critical of the United

3   States government in front of the police, including Defendants Caraway and Cota, as well as

4   allegations establishing that there was no lawful provocation or justification for Sergeant

5   Caraway's use of force.  *Id.*  Thus, she contends, it is plausible to infer that "it was

6   [McCullough's] political activity and speech that motivated Caraway's outsized and violent

7   response."  *Id.*

8          In support of her position, McCullough points to *Capp v. Cnty. of San Diego*, in which the

9   court acknowledged that "speculation [about defendant's motivation] is hardly unusual in

10  retaliation cases" and concluded that the First Amendment retaliation claim was sufficiently pled

11  based on allegations that (1) plaintiff engaged in a protected act, (2) defendants' adverse actions

12  occurred after the protected activity, and (3) defendants were purely motivated by that protected

13  act when they took their adverse action. *Id.* at 5-6 (citing 940 F.3d 1046, 1055 (9th Cir. 2019)).

14         McCullough further asserts that retaliatory animus can be inferred "by comparing the level

15  of force used" by Sergeant Caraway to the peaceful nature of McCullough's conduct.  *Id.* at 6

16  (citing *Anti Police-Terror Project v. City of Oakland*, 477 F. Supp. 3d 1066, 1088 (N.D. Cal.

17  2020); *Johnson v. City of Berkeley*, No. 15-CV-05343-JSC, 2016 WL 928723, at *5 (N.D. Cal.

18  2016); *Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't*, 466 F. Supp.

19  3d 1206, 1214);  *Don't Shoot Portland v. City of Portland*, 465 F. Supp.3d 1150, 1155–1156 (D.

20  Or. 2020); *Breathe v. City of Detroit*, 484 F.Supp.3d 511, 518 (E.D. Mich. 2020)).

21         In their Reply, Defendants reiterate their position that McCullough fails to show that

22  protected activity was the "but-for" cause of Sergeant Caraway's use of force, asserting that

23  McCullough relies on cases that apply a lower standard and are factually distinguishable.  Reply at

24  2.  Defendants contend *Capp* and *Watison* involved pro se plaintiffs whose pleadings were entitled

25  to liberal construction whereas McCullough is represented by counsel and therefore must be held

26  to a stricter standard.  *Id.* According to Defendants, *Capp* is also factually distinguishable because

27  in that case, the plaintiff pled a lack of substantial justification for the defendants' conduct *and*

28  differential treatment [by the social worker whose conduct was alleged to have been retaliatory]

United States District Court
Northern District of California

from a similarly situated parent who did not exercise their First Amendment rights." *Id.* at 3 (emphasis in original).

According to Defendants, McCullough does not allege a timeline that supports an inference of but-for causation and in alleging she "placed her left hand on top of the barricade" she concedes that she was "physically breaching" the metal barricade – providing a non-retaliatory motive for Sergeant Carraway's conduct. *Id.* at 4. Defendants argue that "the claim that demonstrators were 'peacefully' chanting (FAC ¶ 18) does not mean demonstrators were obeying lawful orders or commands. Nor does the Court need to accept as true Plaintiff's legal conclusion that Sergeant Caraway acted 'without lawful provocation or justification' (FAC ¶ 21)." *Id.* (citing *Iqbal*, 556 U.S. at 678).

Defendants also distinguish cases McCullough relies upon that addressed retaliation claims at the summary judgment stage of the case, arguing that "[c]ases discussing retaliatory arrest claims at summary judgment offer no guidance on evaluating the sufficiency of pleadings at motion to dismiss." *Id.* at 2-3 (citing *Crump v. Bay Area Rapid Transit Dist.*, No. 17-CV-2259-JCS, 2018 WL 4927114 (N.D. Cal. Oct. 10, 2018), aff'd, 821 F.App'x 705 (9th Cir. 2020); *Johnson v. Cnty. of San Bernardino*, No. EDCV 18-2523-GW-AFMX, 2020 WL 5224350 (C.D. Cal. June 24, 2020)).

Finally, Defendants assert that the cases cited by McCullough involving "indiscriminate force" are distinguishable. *Id.* at 4 n. 1 (citing *Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1214 (W.D. Wash. 2020); *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1155-56 (D. Or. 2020); *Breathe v. City of Detroit*, 484 F. Supp. 3d 511, 518 (E.D. Mich. 2020); *Anti Police-Terror Project v. City of Oakland*, 477 F. Supp. 3d 1066, 1088 (N.D. Cal. 2020); *Johnson v. City of Berkeley*, No. 15-CV-05343-JSC, 2016 WL 928723 (N.D. Cal. 2016)).

### 2. Discussion

To establish a claim for retaliatory violation of the First Amendment, McCullough must show (1) that she was engaged in a constitutionally protected activity; (2) that Sergeant Caraway's actions would "chill a person of ordinary firmness from continuing to engage in the protected

activity;" and (3) that "the protected activity was a substantial or motivating factor in [Sergeant Caraway's] conduct." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020). Defendants do not dispute that the first two elements are satisfied but contend the third element is insufficiently pled. The Court disagrees.

To satisfy the third element of a retaliation claim, "a plaintiff must show that the defendant's retaliatory animus was 'a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.' " *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)). "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). If a factfinder concludes that there was no legitimate justification for [the defendant's] actions, they [may] reasonably infer that those actions were motivated by retaliatory animus." *Sanderlin v. Dwyer*, No. 23-15487, 2024 WL 4033065, at *4 (9th Cir. Sept. 4, 2024).

For example, in *Sanderlin*, the Ninth Circuit found that the plaintiff adequately alleged the third element of his retaliation claim based on allegations that an officer shot him in the groin with a projectile at a demonstration where he was doing nothing more than holding up a sign – even though the officer claimed that the demonstrator was intentionally blocking his access to other demonstrators who were throwing objects at police offices and whom he was attempting to apprehend. *Id.* The Ninth Circuit rejected the officer's argument that the third prong of the retaliation claim was insufficiently alleged on the basis that that argument "assume[d] the truth of [the officer's] version of the facts, and at [the pleading] stage of the proceedings, we must construe the evidence in the light most favorable to [the plaintiff]." *Id.* (citing *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023)). The court continued:

> Whether or not [the plaintiff] was in fact obstructing officers, rather than engaging in the protected activity of peacefully protesting, will turn on whether a factfinder eventually credits [the officer's] description of the circumstances surrounding the shooting. According to Sanderlin, he was merely standing peacefully on the sidewalk holding the sign. Resolving the disputed facts in Sanderlin's favor, he was engaged in protected First Amendment activity.

United States District Court
Northern District of California

1    *Id.*

2         *Sanderlin* is on all fours with the factual allegations here.  McCullough alleges that she

3    was peacefully protesting with a group of demonstrators chanting in support of Palestine and

4    criticizing the United States government when Sergeant Caraway brought his baton down on her

5    hand with extreme force and for no legitimate reason.  And although Defendants contend

6    McCullough was "breaching" the barricade and speculate that she may have been disregarding

7    officers' lawful orders or commands, that argument must fail because at the pleading stage it is

8    Plaintiff's version of events that controls and not the competing version offered by Sergeant

9    Caraway that controls.  *Id.*  McCullough alleges that she was demonstrating peacefully, that she

10   merely "placed" her hand on the barricade, and that Sergeant Caraway's use of force came

11   "[w]ithout warning and without lawful provocation or justification."  FAC ¶¶ 19-21. As in

12   *Sanderlin*, these allegations are sufficient at the pleading stage of the case to raise a plausible

13   inference that Sergeant Caraway's conduct was substantially motivated by McCullough's

14   protected activity.  Therefore, the Court reject's Defendants' argument that Claim Two should be

15   dismissed for failure to state a claim.

16         **C.    Claim Four (*Monell* Claim)**

17              **1.  Background**

18         In Claim Four, McCullough asserts a claim against the City and County of San Francisco

19   ("the City") under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of the City of New* York,

20   436 U.S. 658 (1978) based on its failure to properly train, supervise and/or discipline Defendant

21   Caraway to refrain from the use of excessive force. FAC ¶¶ 62-64.[3]  McCullough alleges in

22   support of this claim that Defendant Caraway had "a concerning and documented history of using

23   his bare hands to strike or choke non-violent persons" but nonetheless was promoted to Sergeant

24   and "continued this concerning pattern, apparently emboldened to continue his misconduct with

25   impunity."  *Id.* ¶ 64. According to McCullough, the City "failed to properly train and/or supervise

26

27   _____

     [3] There is a typographical error in the numbering of the paragraphs of this claim.  This claim
28   consists of six paragraphs and includes two paragraphs numbered "64".  The Court's citation
     refers to the second of those.  The Court does not attempt to renumber the paragraphs in the FAC
     as this would likely cause even more confusion.

and/or discipline defendant Caraway to refrain from the use of excessive force, and its failure is the moving force behind defendant Caraway's use of excessive force against plaintiff." *Id.* ¶ 65. McCullough further alleges that "[t]he Chief of Police ratified [Caraway's] conduct by refusing on multiple occasions to impose discipline or administer corrective action against defendant Caraway and by promoting him and commending him despite his concerning history of using excessive force against non-violent persons." *Id.* ¶ 66.

In the Motion, Defendants contend McCullough's allegations are too conclusory to establish direct liability against the City under *Monell*, whether based on a theory of failure to train or ratification. Motion at 5 (citing *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018)). According to Defendants, McCullough's failure to train allegations are deficient because "she does not articulate any particular omission in the City's training program or that any policymaker knowingly maintained such a program [and] [s]he fails to allege facts to show any City policymaker 'disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights.'" *Id.* at 6 (citing *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014)).

Defendants further assert that McCullough's reliance on a theory of ratification is "grasping" because "the FAC . . . fails to plead facts to support an inference that any City policymaker actually ratified Sergeant Caraway's actions or knew the basis for them." *Id.* at 7-9. In particular, Defendants contend mere failure to discipline does not establish ratification. *Id.* at 8 (citing *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022)). Defendants further challenge McCullough's ratification allegations on the grounds that she has not alleged facts showing that the final policymaker who was responsible for Defendant Caraway's promotion and commendation was aware of his purportedly unconstitutional conduct. *Id.* (citing *Bennett v. Cnty. of Shasta*, 2:15-cv-01764-MCE-CMK, 2017 WL 3394128, at *4 (E.D. Cal. Aug. 8, 2017); *Gavin v. City of Los Angeles*, 2:05-cv-09001-FMC-SSx, 2007 WL 9706236, at *11 (C.D. Cal. Aug. 8, 2007)). Moreover, Defendants contend, McCullough's allegations about Defendant Caraway's past uses of force are insufficient because she assumes without alleging specific facts that these uses of force were improper. *Id.*

United States District Court
Northern District of California

1   In her Opposition, McCullough counters that she has adequately alleged *Monell* liability

2   based on: 1) "use of force training [that is] deficient such that Caraway has consistently used

3   excessive force against unarmed, non-violent persons. (FAC at ¶¶ 33-37.)"; 2) a custom or practice

4   of failure to discipline and supervise officers; and 3) ratification.  Opposition at 7-12.

5   McCullough rejects Defendants' argument that she is required to identify specific shortcomings in

6   the City's training program, arguing that although that is one way of pleading *Monell* liability, it is

7   not the only one.  *Id.*  at 8.  Rather, she asserts, *Monell* liability can be adequately alleged where

8   there are (1) "sufficient allegations of underlying facts to give fair notice and to enable the

9   opposing party to defend itself effectively" and (2) those facts "plausibly suggest an entitlement to

10  relief, such that it is not unfair to require the opposing party to be subjected to the expense of

11  discovery and continued litigation."  *Id.*  (citing *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d

12  631 (9th Cir. 2012)).   Here, McCullough asserts, the "fair notice" requirement is met by her

13  allegations that the City's use of force training is deficient such that Caraway has consistently used

14  excessive force against unarmed, non-violent persons and the specific examples of his misconduct

15  that have occurred over a decade.  *Id.* (citing FAC at ¶¶ 33-37).

16  McCullough argues that *Flores* is not on point because that case involved only *one* other

17  incident, which was not sufficient to establish a "pattern" of misconduct.  *Id.*  at 9 (citing *Flores*,

18  785 F.3d at 1159). Furthermore, McCullough argues, because that incident was rape, the court in

19  *Flores* reasoned that it did not support a failure to train theory because "if the threat of prison time

20  does not sufficiently deter sexual assault, it is not plausible to assume that a specific instruction not to

21  commit sexual assault will provide such deterrence[.]" *Id.* (quoting *Flores*, 785 F.3d at 1160).  In

22  contrast, "use of force . . . is a daily occurrence in the performance of an officer's duties and may be

23  used in a lawful and permissible manner" and therefore, "[t]he municipality that employs the officers

24  must educate them against its impermissible use—policies, training, and discipline and the primary

25  deterrents."  *Id.*

26  Similarly, McCullough argues that a custom and practice of failure to supervise or

27  discipline can "'can be inferred from . . . . evidence of repeated constitutional violations for which

28  the errant municipal officers were not discharged or reprimanded.'"  *Id.*  at 10 (quoting *Velazquez*

1  *v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015) (quoting *Hunter v. Cnty. of*

2  *Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (internal quotation marks omitted in

3  *Velazquez*)). According to McCullough, Defendants don't challenge the sufficiency of her

4  allegations that the failure to supervise and discipline is a custom or practice of the City.  *Id.*

5       McCullough rejects Defendants' argument that she has insufficiently pled ratification,

6  pointing to her allegations that "the Chief of Police is responsible for the imposition of discipline

7  and administration of corrective action when a police officer violates policy and/or the law" and

8  "that the Chief of Police repeatedly failed to discipline Caraway for his uses of strikes and choke

9  holds against nonviolent persons and even promoted him and gave him a commendation." *Id.*

10 (citing FAC ¶¶ 39, ¶¶ 41-43). She also points to her allegations that "even when Defendant

11 Caraway committed misconduct in the presence of a supervisor and then lied about it on his use of

12 force report, the supervisor took no steps to intervene in Caraway's misconduct or to correct his

13 false report." *Id.* (citing FAC ¶¶ 25-26, 32).

14      McCullough also rejects Defendants' assertion that she has not adequately alleged

15 ratification because she has not alleged facts showing that the relevant decision-makers were

16 aware of Defendant Caraway's past use of force, asserting that her allegations "make[ ] clear that

17 the Chief of Police was both responsible for discipline and administration of corrective action and

18 failed to properly execute that responsibility." *Id.*  at 11 (citing FAC ¶¶ 39, 41-42). She notes that

19 complaints of excessive force that lead to great bodily injury or death are public records under Cal.

20 Pen. Code § 832.7(a) and also points to her allegations that Defendant Caraway "admitted that he

21 punched a subdued arrestee four times in the face" and was promoted soon after that admission.

22 *Id.* (citing FAC ¶¶ 37, 42).  Therefore, she contends, the FAC raises a plausible inference that the

23 person in charge of disciplining Defendant Caraway was aware of these incidents and acted in

24 reckless disregard of that conduct. *Id.*

25      Finally, McCullough argues that while Defendants are "free to argue" that Defendant

26 Caraway's past uses of force were not excessive, "at the pleading stage, it is common practice to

27 point the court to other complaints of similar unlawful conduct, without regard to whether a court

28 or jury ever determined that the conduct was unlawful." *Id.* at 11-12 (citing *Est. of Alejandro*

United States District Court
Northern District of California

*Sanchez v. Cnty. of Stanislaus*, No. 118CV00977DADBAM, 2019 WL 1745868, at *4 (E.D. Cal. Apr. 18, 2019)).

In their Reply, Defendants argue that McCullough's reliance on *Estate of Alejandro Sanchez v. Cnty. of Stanislaus*, 2019 WL 1745868 (E.D. Cal. Apr. 18, 2019) is misplaced and that that case does not support the "relaxed standard" McCullough advances in support of her failure to train theory of *Monell* liability.  Reply at 5.  Rather, they contend, McCullough must identify some specific omission in the City's training program to adequately plead *Monell* liability under this theory.  *Id.* at 6.  Defendants further assert that McCullough did not plead a custom or practice theory of *Monell* liability in her FAC and the allegations do not show any "persistent and widespread" custom or practice caused the alleged constitutional violation, as is required to establish *Monell* liability on this ground.  *Id.* (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).  As to the ratification theory, Defendants reiterate their position that the FAC "does not properly allege specific actions that the Chief took in connection with their 'approval' of the misconduct that could support an inference that they actually ratified the previous instances of alleged misconduct."  *Id.*  at 7 (citing *Nguyen v. Cnty. of Orange*, No. 822CV01693DOCADS, 2023 WL 4682301, at *3 (C.D. Cal. June 8, 2023) (quoting *Mitchell v. Cnty. of Contra Costa*, 600 F. Supp. 3d 1018, 1033 (N.D. Cal. 2022))).

## 2.  Discussion

It is well-established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 692.  A municipality may, however, be held liable for injury caused by a constitutional violation where there is (1) an unconstitutional custom or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or have a needed policy; or (3) a final policy-maker's involvement in, or ratification of, the conduct underlying the violation of rights. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010).

*Monell* liability is sufficiently alleged where the complaint contains (1) "'sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

United States District Court
Northern District of California

1   effectively'" and (2) those facts must "'plausibly suggest an entitlement to relief, such that it is not

2   unfair to require the opposing party to be subjected to the expense of discovery and continued

3   litigation.'" *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) (quoting *Starr

4   v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The Court concludes that McCullough has

5   adequately alleged *Monell* liability based on an unconstitutional custom or practice of failure to

6   supervise or discipline officers.  Therefore, it does not reach the question of whether her failure to

7   train and ratification  theories are adequately alleged.

8          The pleading standard for "custom or practice" liability was addressed in *Estate of

9   Alejandro Sanchez v. Cty. of Stanislaus*, No. 18-00977,  2019 WL 1745868, at *4 (E.D. Cal. Apr.

10  18, 2019). There, the court recognized that "*Monell* claims 'may not simply recite the elements of

11  a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and

12  to enable the opposing party to defend itself effectively.'" *Id.*  (quoting *AE ex rel. Hernandez v.

13  County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)). The court noted that in applying this

14  standard, some district courts have required not only "sufficient factual allegations" but also that

15  the plaintiff "identify the particular policy or custom that caused the constitutional violation

16  without resorting to conclusory statements." *Id.*  (citing cases). "Other courts have adopted a more

17  lenient pleading standard, holding that while a complaint must include a sufficient quantum of

18  factual material to plausibly suggest the existence of a policy or custom, the policy or custom itself

19  need not be specifically alleged, or may be alleged only generally." *Id.*

20          The *Sanchez* court concluded that the latter approach is correct, finding that while "the

21  complaint must contain sufficient factual allegations to plausibly suggest a policy or custom, as

22  opposed to merely random, unconnected acts of misconduct . . . the details of the policy or custom

23  . . . [are] a subject more properly left to development through discovery." *Id.*  at *5.  The court

24  reasoned that "[it] is a rare plaintiff who will have access to the precise contours of a policy or

25  custom prior [to] having engaged in discovery, and requiring a plaintiff to plead its existence in

26  detail is likely to be no more than an exercise in educated guesswork." *Id.*  (citations omitted).

27  This Court finds the reasoning of *Sanchez* persuasive and applies the approach taken in that case to

28  determining the sufficiency of the custom and practice allegations here.

*Monell* liability based on a policy or custom of failure to supervise or discipline officers, can be established based on "repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015) (quoting *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (internal quotation marks omitted in *Velazquez*).  Here, McCullough has offered specific allegations relating to multiple past uses of excessive force by Defendant Caraway, FAC ¶¶ 33-37, and has further alleged that McCullough was not disciplined for these uses of force but instead, was promoted and given a commendation.  FAC ¶¶ 38-43, 63-65.  These allegations are sufficient to plausibly allege *Monell* liability based on a custom and practice of failure to supervise or discipline.

Therefore, the Court DENIES the Motion as to McCullough's *Monell* claim.

## D.    Claim Six (Ralph Act Claim)

### 1.    Background

McCullough's Ralph Act Claim is asserted under Cal. Civ. Code § 51.7, which states that persons within California have the right to be free from any "violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation . . . . " Cal. Civ. Code § 51.7.  In support of this claim, McCullough alleges that "Defendant Caraway was substantially motivated by plaintiff's political affiliation in standing with the innocent children and adults being murdered with U.S.-supplied weapons in Gaza and participating in a march whose message was critical of the United States government."  FAC ¶ 75.

In the Motion, Defendants contend this claim is insufficiently pled because McCullough has not plausibly alleged that "her political affiliation was a motivating reason for Sergeant Caraway's conduct."  Motion at 9-10.  Because her allegations as to Defendant Caraway's motivation are entirely conclusory, Defendants contend, this claim should be dismissed for failure to state a claim.  *Id.*  (citing *Lopez v. Cnty. of Los Angeles*, No. EDCV 21-290 JGB (SHKx), 2021 WL 6752171, at *6 (C.D. Cal. Nov. 12, 2021); *Ramirez v. City of San Jose*, No. 21-CV-08127-VKD, 2022 WL 875643, at *9 (N.D. Cal. Mar. 24, 2022); *Arres v. City of Fresno*, No. CV F 10-1628 LJO SMS, 2011 WL 284971, at *27 (E.D. Cal. Jan. 26, 2011); *Garcia v. Diaz*, No. 5:20-cv-

02564-FLA (MAA), 2021 WL 4775638, at *12 (C.D. Cal. July 14, 2021)).

In her Opposition, McCullough argues that her allegations as to motivation are sufficient, asserting that "courts in this district have long recognized that 'as a practical matter, it would be extremely difficult for Plaintiff to allege the individual defendants' [subject] animus absent a blatant comment by one of the defendants – which is highly unlikely – or some degree of discovery." Opposition at 12 (citing *Jones v. Cnty. of Contra Costa*, No. 13-CV-05552-TEH, 2016 WL 1569974, at *5 (N.D. Cal. Apr. 19, 2016); *Shirazi v. Oweis*, No. 5:21-CV-00136-EJD, 2022 WL 445763, at *7 (N.D. Cal. Feb. 14, 2022)).  Therefore, she contends, "courts permit Ralph Act claims to proceed where the complaint alleges that the plaintiff was politically affiliated, the defendant engaged in violent, threatening and/or menacing actions against the plaintiff, and the defendant was motivated by plaintiff's political affiliation." *Id.* at 12-13 (citing *Shirazi*, 2022 WL 445763, at *7; *Black Lives Matter-Stockton Chapter v. San Joaquin Cnty. Sheriff's Off.*, 398 F. Supp. 3d 660, 679 (E.D. Cal. 2019); *Jones*, 2016 WL 1569974, at *5).  According to McCullough, her allegations go beyond these conclusory allegations because she has alleged that Defendant Caraway used extreme violence against a peaceful demonstrator, without any justification, giving rise to an inference that he was motivated by McCullough's political affiliation, as discussed above.  *Id.* at 13.

### 2.  Discussion

To state a Ralph Act claim, McCullough must allege that Defendant Caraway (1) committed or threatened a violent act against her; (2) was motivated by his perception of her political affiliation; (3) that she was harmed; and (4) that Defendant Caraway's conduct was a substantial factor in causing her harm. *Campbell v. Feld Entertainment, Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014) (citing *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007)). For the same reasons the Court concludes that McCullough has adequately alleged retaliatory animus in connection with her First Amendment claim, discussed above, it also finds that her allegations are sufficient to plausibly allege that Defendant Caraway was motivated by McCullough's political affiliation when he used force against here for the purposes of her Ralph Act claim.  Therefore, the Motion is DENIED as to McCullough's Ralph Act claim.

1

### E.   Claim Nine (Negligent Hiring, Training and Retention)

2

#### 1.   Background

3

In the FAC, McCullough brings a state law claim for negligent hiring, training and

4

retention against the City based on allegations that: 1) the City employs the Chief of Police; 2)

5

"The Chief of Police had a duty to hire, supervise, train, and retain employees and/or agents so

6

that employees and/or agents refrain from the conduct and/or omissions alleged" in the FAC; and

7

3) "The Chief of Police breached this duty, causing the conduct alleged" in the FAC.  FAC ¶¶ 89-

8

91.  McCullough further alleges that the Chief of Police was acting within the scope of his

9

employment, and therefore that the City is liable for this conduct pursuant to California

10

Government Code section 815.2.  FAC ¶¶ 91-92.

11

In the Motion, Defendants argue that "there is no viable negligent hiring, training, and

12

retention claim against the City (Claim Nine) under state law."  Motion at 2.  First, they contend,

13

the California Tort Claims Act permits liability against a public entity based on an injury

14

"aris[ing] out of an act or omission of the public entity" only where there is a "specific statute

15

either declaring the entity to be liable or creating a specific duty of care apart from the general tort

16

principles embodied in Civil Code section 1714."  *Id.*  at 10 (citing Cal. Gov't Code § 815(a); *de*

17

*Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 251 (2007)).  According to Defendants,

18

"[c]ourts have consistently held that no statutory basis exists for alleging a claim of negligent

19

hiring or supervision against a governmental entity."  *Id.* (citing *De Villers*, 156 Cal. App. 4th at

20

255–56).

21

With respect to vicarious liability, Defendants argue that "such a claim is not recognized

22

by law." Motion at 11 (citing *Walker v. Cnty. of Santa Clara*, No. C 04-02211 RMW, 2005 WL

23

2437037, at *9 (N.D. Cal. Sept. 30, 2005)).  Furthermore, they assert, to the extent McCullough

24

"attempt[s] to plead vicarious liability against the City for alleged acts by the Chief of Police[,]"

25

that theory "also fails [because] [t]he City is immune from liability for acts or omissions of an

26

employee where the employee is immune from liability."  *Id.*  (citing Cal. Gov't Code § 815.2(b)).

27

According to Defendants, the Chief of Police is immune from liability for his personnel decisions,

28

*e.g.* hiring, supervisory, training, and retention, because those decisions are discretionary and

United States District Court
Northern District of California

1   therefore fall under Cal. Gov't Code § 820.2, which provides that "a public employee is not liable

2   for an injury resulting from his act or omission where the act or omission was the result of the

3   exercise of the discretion vested in him, whether or not such discretion be abused."  *Id.*

4        McCullough does not dispute that under the California Tort Claims Act, the City cannot be

5   held directly liable as to this claim because there is no statutory basis for direct liability.

6   Opposition at 13.  She argues, however, that the City may be vicariously liable on this claim based

7   on the acts of the Chief of Police.  *Id.* (citing *C.A. v. William S. Hart Union High Sch. Dist.*, 53

8   Cal. 4th 861, 865, (2012)).  McCullough does not disagree with Defendants that vicarious liability

9   on this claim can only be established if the Chief of Police is not entitled to immunity under Cal.

10  Gov't Code § 820.2 but contends this issue is prematurely raised and cannot be decided on the

11  pleadings.  *Id.* at 13-14 (citing *Elton v. Cty. of Orange*, 3 Cal. App. 3d 1053, 1058 (1970)). Even if

12  the Court were to decide the issue, McCullough argues, it should not find that the Chief of Police

13  is entitled to immunity simply based on the fact that he made everyday decisions about hiring,

14  retention and supervision as immunity requires that the conduct involved *policy level* decisions.

15  *Id.*  at 14.

16       In their Reply, Defendants reject McCullough's reliance on *C.A. v. William S. Hart Union*

17  *High Sch. Dist.*, 53 Cal. 4th 861, 865, (2012), arguing that in that case, vicarious liability was

18  found only because there was a special relationship between the plaintiff – a pupil of the school

19  district – and the school district administrators who hired and supervised the school counselor who

20  abused the plaintiff.  Reply at 8-9.  In contrast, Defendants contend, no special relationship has

21  been alleged here between the Chief of Police and McCullough and moreover, California law

22  "does not recognize a general duty of care on the part of supervisors with respect to negligent

23  hiring, retention, or training." *Id.* (citing *Est. of Hennefer v. Yuba Cnty.*, California, No.

24  222CV00389TLNKJN, 2023 WL 4108077, at *8–9 (E.D. Cal. June 21, 2023); *H.B. v. City of*

25  *Torrance*, No. CV1702373SJOGJS, 2017 WL 10518108, at *3 (C.D. Cal. Aug. 16, 2017);  *Est. of*

26  *Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019)).  For this reason,

27  according to Defendants, "[c]ourts have declined to find a special relationship between law

28  enforcement supervisors and members of the public."  *Id.* (citing *Willis v. Cnty. of Sacramento*,

United States District Court
Northern District of California

No. 2:13-cv-01671-MCE-EFB, 2014 WL 1027070, at *6 (E.D. Cal. Mar. 14, 2014);  *Lindsay v. Fryson*, No. 2:10-cv-02842-LKK-KJN, 2012 WL 2683019, at *7 (E.D. Cal. July 6, 2012); *Fuentes v. City of San Diego*, No. 3:16-cv-02871-BEN-JMA, 2017 WL 2670976, at *3 (S.D. Cal. June 20, 2017)).

### 2.  Discussion

The California Tort Claims Act provides that "[e]xcept as otherwise provided by statute[,]" a public entity "is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov. Code § 815. Therefore, a direct claim of negligence against a public entity must be "founded on a specific statute either declaring the entity to be liable or creating a specific duty of care apart from the general tort principles embodied in Civil Code section 1714[.]" *de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 251 (2007).  It appears to be well-established that under California law, there is no statutory basis for alleging a claim of negligent hiring or supervision against a governmental entity. *H.B. v. City of Torrance*, No. CV1702373SJOGJS, 2017 WL 10518108, at *3 (C.D. Cal. Aug. 16, 2017) (citing cases). Therefore, McCullough's claim for negligent hiring, training and retention against the City fails to the extent that it is based on a theory of direct liability, as McCullough does not dispute.

On the other hand, the California Supreme Court has recognized that under some circumstances, a public entity can be held vicariously liable for negligent hiring, retention and supervision by its employees. *C.A. v. William S. Hart Union*, 53 Cal. 4th 861, 865 (2012). Under California Government Code § 815.2(a), "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Vicarious liability does not apply, however, where the "employee is immune from liability." Cal. Gov't Code § 815.2(b).

Defendants assert that the City is not subject to vicarious liability based on the acts of the Chief of Police because any acts that he took with respect to hiring, training or retaining Officer Caraway would have been discretionary and therefore give rise to immunity under California

20

1    Government Code section 820.2,  which provides that "a public employee is not liable for an

2    injury resulting from his act or omission where the act or omission was the result of the exercise of

3    the discretion vested in him, whether or not such discretion be abused."  However, the Court

4    agrees with McCullough that in light of the standards for determining whether discretionary

5    immunity applies set forth in *Johnson v. State of California*, 69 Cal. 2d 782, 787 (1968), the

6    question of whether the City is immune cannot be decided at the pleading stage because the

7    allegations in the FAC do not establish that these standards are met.  *See Elton v. Cnty. of Orange*,

8    3 Cal. App. 3d 1053 (Cal. Ct. App. 1970).

9         As the court in *Elton* explained, under *Johnson v. State of California*, "the public agency

10   must demonstrate its employee in fact consciously exercised discretion in connection with the

11   negligent acts or omissions charged in order to invoke the 'discretionary acts' immunity

12   provisions of Government Code section 820.2." *Id.*  at 1058.  To do so, "the state must make a

13   showing that such a policy decision, consciously balancing risks and advantages, took place[;]" it

14   is not enough to show that an "employee normally engages in 'discretionary activity[.]'"  Because

15   such a showing cannot be made at the pleading stage, it is premature to decide whether the City is

16   entitled to immunity under Section 820.2. *See id*. Nonetheless, it is McCullough's burden under

17   Cal. Gov't Code § 815.2(a) to allege facts that would be sufficient to show that the Chief of Police

18   (and therefore the City) can be held liable for negligent hiring, training and retention.

19   McCullough has not met her burden in the FAC.

20        To establish vicarious liability for negligent hiring, a plaintiff must establish that

21   "supervisory and administrative" employees of the government entity "who knew or had reason to

22   know of [an employee]'s dangerous propensities and acted negligently in hiring, supervising and

23   retaining [him or] her, would themselves be subject to liability to plaintiff for [her] injuries." *C.A.*

24   *v. William S. Hart Union*, 53 Cal. 4th at 868-69.  In *William S. Hart*, for example, the California

25   Supreme Court found that the school district could be held vicariously liable for the negligence of

26   school district administrators in the hiring and retention of a school counsel who abused the

27   plaintiff, who was a student in the district. *Id.*  at 865.  The court emphasized, however, that "[t]he

28   scope and effect of [its] holding on individual liability [was] limited by requirements of causation

1   and duty, elements of liability that must be established in every tort action." *Id.* at 876.

2        Under the facts of *William S. Hart*, the court found that the school district owed a duty to

3   the plaintiff with respect to the alleged negligence of the school administrators because "a school

4   district and its employees have a special relationship with the district's pupils, a relationship

5   arising from the mandatory character of school attendance and the comprehensive control over

6   students exercised by school personnel, analogous in many ways to the relationship between

7   parents and their children." *Id.* at 869 (citation and internal quotations omitted).  In contrast,

8   California courts have not recognized a general duty of care owed to third parties on the part of

9   supervisors with respect to negligent hiring, retention, or training. *Est. of Osuna v. Cnty. of*

10   *Stanislaus*, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019). Thus, for example, in *Estate of Osuna*,

11   the court found in an excessive force case that the plaintiff had not stated a claim against the

12   county under a vicarious liability theory based on county administrators' alleged negligence in

13   hiring, retaining and supervising officers who used excessive force against the plaintiff because no

14   special relationship was alleged that would have given rise to a duty of care, in contrast to the facts

15   of  *William S. Hart. Id.* at 1182-1183;  *see also Fuentes v. City of San Diego*, No. 3:16-cv-02871-

16   BEN-JMA, 2017 WL 2670976, at *3 (S.D. Cal. June 20, 2017) ("Plaintiffs generally allege that

17   the City and/or SDPD have a duty to protect people from harm and exercise care in selection,

18   retention, training, and supervision of their employees. However, these alleged duties do not

19   resemble the enhanced duties imposed on school personnel that formed the basis for their special

20   relationship with the minor plaintiff in *William S. Hart*."); *Willis v. County of Sacramento*, No.

21   2:13-cv-01671-MCE-EFB, 2014 WL 1027070, at *6 (E.D. Cal. Mar. 14, 2014) (distinguishing

22   *William S. Hart* and dismissing plaintiff's claim against the county sheriff for negligent hiring,

23   supervision, and retention "because Plaintiff did not allege that a duty existed between [the sheriff]

24   and Plaintiff").

25        Here, McCullough has not alleged facts showing that the Chief of Police had a special

26   relationship with her such that he owed her a duty of care.  Consequently, her reliance on *William*

27   *S. Hart* in support of her negligent hiring, training and retention claim against the City is

28   misplaced.  Because she has not adequately alleged that the Chief of Police can be held liable on

1   this claim, her claim against the City is also insufficiently pled.  Therefore, the Court concludes
2   that McCullough fails to state a claim as to Claim Nine.  Because McCullough may be able to cure
3   this deficiency by amendment, she will be given an opportunity to amend her complaint as to this
4   claim.

5   **V.      CONCLUSION**

6          For the reasons set forth above, the Motion is GRANTED as to Claim Nine, which is
7   dismissed.  The Motion is DENIED in all other respects.  No later than **October 30, 2024,**
8   McCullough shall either file a Second Amended Complaint addressing the deficiencies discussed
9   above with respect to Claim Nine *or* file a notice of her intent to proceed with the case without
10  amending as to that claim.

11          **IT IS SO ORDERED.**

13  Dated:  September 30, 2024

                                                    _____
                                                    JOSEPH C. SPERO
                                                    United States Magistrate Judge

United States District Court
Northern District of California